UNITED STATES DISTRICT COURT
DISTRICT OF RHODE ISLAND

_____
                                    )
UNITED STATES OF AMERICA            )
                                    )
        v.                          )      Cr. No. 09-122-S
                                    )
JOSEPH CORBIN                       )
_____    )

**OPINION AND JUDGMENT**

WILLIAM E. SMITH, United States District Judge.

The Grand Jury charged by indictment Defendant Joseph Corbin ("Defendant") with attempted robbery under 18 U.S.C.A. § 2113(a). A bench trial was held before the Court on April 12-13, 2010. For the reasons set forth below, the Court finds that the government failed to meet its burden of proof, and Defendant is therefore acquitted.

I.   Findings of Fact

On June 19, 2009, Burrillville police dispatcher Glen Biddiscombe received a 911 call at approximately 4:30 p.m. from an excited and nervous woman reporting that her son was about to commit a bank robbery. (See Tr. vol. 1, 9:18-25, Apr. 12, 2010.) The woman, Defendant's mother, gave a physical description of him and described what Defendant had said he planned to do. After receiving the call, Biddiscombe dispatched Officer Jason Cahill to the Bank of America branch in the village of Pascoag. (See Tr. vol. 1, 14:21-24.)

When Cahill arrived in Pascoag center, he parked his marked police vehicle on the street in front of the bank, and stood in uniform on the sidewalk. After "several minutes," he spotted Defendant across the street. (Id. 38:20-23.) Cahill testified that as Defendant walked down the hill, he would have had a clear view of the police vehicle parked in front of the bank (although he appeared to be looking downward). Defendant used a cross walk to cross the street, continued along the sidewalk, and then started to walk towards the wheelchair ramp of the bank. When Defendant was several steps away from the ramp entrance, Cahill decided to intervene. He approached Defendant, and placed him in handcuffs. (See id. 24:13-25; 25:7-8.)

After being placed in custody, Defendant admitted to Cahill he had a fight with his mother, and had left his house saying he was going to rob the local bank. (See id. 25:24-26:1.) He disclosed that he had no accounts at Bank of America. He declared, however, that on the way to the branch, he had changed his mind. (Tr. vol. 1 29:16-17.) After ditching the robbery idea, he continued, he had decided to go find his sister at George's Restaurant, located directly across the street from the bank. (See id. 26:10-11.)

Subsequent to the initial pat-down of Defendant, a more thorough physical search of Defendant at the station turned up an envelope and a folded bandanna stuck in his left front

pocket. (See Tr. vol. 2 10:3-16.) Scrawled on the envelope in shaky print were the words, "[t]his is a ro[bbery] act ver[y] care[ful] no d[ye] ba[g]." (Gov't Ex. 9.) Defendant admitted he had penned the note. He conceded he had originally intended to use it, and the bandanna, in connection with the robbery.

II.  Legal Standard

The government charges Defendant with attempted robbery under 18 U.S.C.A. § 2113(a):

> Whoever, by force and violence, or by intimidation, takes, or attempts to take, from the person or presence of another, or obtains or attempts to obtain by extortion any property or money or any other thing of value belonging to, or in the care, custody, control, management, or possession of, any bank, credit union, or any savings and loan association . . . [s]hall be fined under this title or imprisoned not more than twenty years, or both.

18 U.S.C.A. § 2113(a) (2010). "To prove attempt, the government must establish both an intent to commit the substantive offense and a substantial step towards its commission." United States v. Turner, 501 F.3d 59, 68 (1st Cir. 2007) (quoting United States v. Burgos, 254 F.3d 8, 12 (1st Cir. 2001)). "While 'mere preparation' does not constitute a substantial step, a defendant 'does not have to get very far along the line toward ultimate commission of the object crime in order to commit the attempt offense.'" Id. (quoting United States v. Doyon, 194 F.3d 207, 211 (1st Cir. 1999).

3

A threshold legal issue in this case is whether § 2113(a) requires the government to demonstrate that Defendant engaged in "force and violence, or intimidation".  The government contends that "force" or "intimidation" is not an element of attempted bank robbery under the statute.  Rather, it says, proof of "force" or "intimidation" is only necessary to convict someone of the ultimate completed offense of actually "tak[ing]" money from a bank.  Defendant disputes this interpretation, and argues that the statute makes force or intimidation part of both attempted robbery and robbery itself.

The First Circuit has not directly addressed the issue of whether "force and violence, or . . . intimidation" is a required element of the attempt offense.  See § 2113(a).  The only case that closely approaches the issue is United States v. Chapdelaine, 989 F.2d 28 (1st Cir. 1993).  However, the facts of that case are different enough from the present case that it is difficult to draw any clear inference of how the court of appeals might view the "force and violence, or . . . intimidation" language in the context of a substantial step analysis.  In Chapdelaine, four defendants carefully planned a robbery of a Wells Fargo truck, studied the truck's schedule and employed the use of stolen cars and fake license plates.  See id. at 30-31.  The defendants were also found with a laundry

4

bag, firearms and ammunition, a make-up kit, wig, gloves, clothing, and a police scanner. Id. at 31.

This overwhelming circumstantial evidence of the defendants' intended crime was sufficient to establish a substantial step toward the use of "force and violence" to carry out the offense. In fact, the court noted that "by transferring the guns to the [car] before setting off for the mall . . . Chapdelaine 'intended to have [the weapons] available for possible use during . . . a robbery.'" Id. at 34 n.5 (internal citation omitted). While the Court did not directly answer the question of whether a defendant must actually use force and violence or intimidation in connection with the attempt itself, one could surmise that if so the facts of Chapdelaine were sufficient to establish that element.

Here, the evidence of a "substantial step" is so paper-thin that the issue of whether "force and violence, or . . . intimidation" is required must be decided squarely. In a case such as this then, a more rigorous statutory analysis becomes critical to determine what the government must prove.

The government relies on the Second Circuit's decision in United States v. Jackson, 560 F.2d 112, 116-17 (2d Cir. 1977). In addressing the argument that proving attempted robbery under § 2113(a) requires showing "force and violence, or . . . intimidation," the court stated:

5

> We reject this wooden logic. Attempt is a subtle concept that requires a rational and logically sound definition, one that enables society to punish malefactors who have unequivocally set out upon a criminal course without requiring law enforcement officers to delay until innocent bystanders are imperiled.

Id. (quoting United States v. Stallworth, 543 F.2d 1038, 1040 (2d Cir. 1976)). Defendant, on the other hand, relies on the Seventh Circuit's much more recent holding United States v. Thornton, which took the opposite view:

> Under a straightforward reading of §2113(a), the "attempt" language relates only to the taking and not to the intimidation. The government argues that all that is necessary is that a defendant attempt to intimidate while attempting to rob a bank. If that were so, attempt would relate to the "by force and violence or intimidation" language and the statute would have begun with, "Whoever attempts by force and violence or intimidation to take . . . ." The "by force and violence, or by intimidation" language relates to both "takes" and the phrase "attempts to take." Accordingly, actual force and violence or intimidation is required for a conviction under the first paragraph of § 2113(a), whether the defendant succeeds (takes) or fails (attempts to take) in his robbery attempt.

539 F.3d 741, 747 (7th Cir. 2008).

The analysis in Thornton is clearly truer to the plain language of § 2113(a), and thus more persuasive than Jackson. In Jackson, the court did not examine the language of the statute at all, but rather appeared to read "force and violence or by intimidation" right out of it to further the legitimate and laudable goals of crime prevention and protecting the

public.   See Jackson, 560 F.2d at 116-17.   While these are, of course, worthy goals, such policy objectives do not give courts a blank check to rewrite the statute.   As § 2113(a) is written, "force and violence, or by intimidation" appears before the word "attempt", and clearly modifies it.   Therefore, the government must prove beyond a reasonable doubt that Defendant took substantial steps involving "force and violence" or "intimidation" toward robbing the bank in order to convict Defendant of attempted robbery.

III. Application of Law to Facts

The government has not carried its burden in this case. First, there has been no showing of "force and violence, or . . . intimidation" in the alleged attempt.   See 18 U.S.C.A. § 2113(a).   This is outcome-determinative.   Assuming the proof in Chapdelaine was sufficient to meet this element, there are no facts that could even arguably establish it here.   The best that can be said is that the note Defendant prepared shows he did, at some point, intend to engage in "intimidation" of a bank teller in the future.   However, the note was crumpled up in his pocket, and had not been accessed by him or shown to anyone.   It was not even recovered until a second search of Defendant was conducted at the station.   This does not come close to establishing the use of "intimidation."

7

There should be no concern that this holding could frustrate law enforcement or endanger the public. The government was not required to charge Defendant under § 2113(a). Defendant could have been charged with other federal or state crimes, the elements of which may well have fit these facts. For example, state law prohibits attempted larceny, R.I. Gen. Laws § 11-41-6 (2010), and federal law also provides another statute for attempted robbery, see 18 U.S.C. § 1951(a)(2010). Neither of these statutes requires proving the element of force and violence, or intimidation. The government chose the statute with the heavier burden in this case; but that is not a reason to stretch the language of § 2113(a) to fit the facts.

Second, even if the Court assumes that the Second Circuit's view would prevail in this Circuit and the evidence need not show force, violence, or intimidation, but only a substantial step toward commission of the crime, the government still failed to meet its burden. Defendant's acts do not approach the level of preparation detailed in cases where the First Circuit found a substantial step had been established. For instance, this is not a case in which a defendant had acquired an arsenal of handguns, masks, bullet proof vests, police scanners, duffle bags for money and vehicles to escape in. See Turner, 501 F.3d at 64; United States v. LiCausi, 167 F.3d 36, 47-48 (1st Cir. 1999); Chapdelaine, 989 F.2d at 33. There was also no evidence

8

that Defendant had cased the bank, practiced dry-runs or had an escape plan in place.   See Turner, 501 F.3d at 68-69; Chapdelaine, 989 F.2d at 33; United States v. Del Carmen Ramirez, 823 F.2d 1, 2 (1st Cir. 1987).

Here, Cahill testified that Defendant crossed the street, continued on the sidewalk side of the sign standing between the sidewalk and the edge of the blacktop, and then turned into the lot.  Cahill also testified that his marked police vehicle was parked in front of the bank, giving Defendant an unobstructed view of the vehicle.  Cahill was also standing in uniform in front of the bank as Defendant walked down the hill approaching the bank.  Defendant did not have any weapons on his person. The bandanna was not covering Defendant's face as he neared the bank; again, it and the note were still stashed in his pocket, and not found until he was taken to the station.  There was no evidence that Defendant reached for either object as he walked toward the bank, or that he seemed focused or agitated.

The most obvious question raised by these facts is, what was Defendant thinking as he approached the bank?  This matters because, for the government's case to hold water, Defendant must have come within a reasonable vicinity of the bank still planning to commit the robbery.  If he lost his resolve somewhere between his house and the bank as he walked down High Street, as he claimed, then walking into the bank parking lot

9

could not be considered a "substantial step" towards any criminal act.   In other words, the government must show that Defendant's intent to commit the crime coincided with the alleged "substantial step."   Otherwise, the action supposedly constituting the "substantial step" would not have furthered any criminal purpose.

In this respect, the Court can only speculate about Defendant's intentions as he approached Cahill.   Defendant did step off the sidewalk onto the blacktop area of the parking lot, and this could indicate that Defendant was still planning on entering the bank and carrying out the robbery.   Yet, the Court is left quite uncertain as to Defendant's actual intentions.   Experience teaches, of course, that bank robbers do many ill-advised things.   But why would one walk right towards a bank he intended to rob when there was a police car parked next to it in plain view, and, indeed, a police officer standing directly in front of the bank?   Perhaps Defendant thought it would be more suspicious if he turned and walked away once he saw the officer, even though he no longer had any intent to rob the bank.   One can only guess, and Defendant offered no clarification since he exercised his right not to testify.

But as Defendant's counsel correctly points out, the fact that the Court is left to ponder these possibilities is inconsistent with finding Defendant guilty beyond a reasonable

doubt.   The government therefore has not met its burden in proving beyond a reasonable doubt that Defendant had taken a substantial step towards the robbery.

IV.  Conclusion

For the foregoing reasons, the Court finds Defendant NOT GUILTY and he is therefore acquitted.

IT IS SO ORDERED.


*/s/ William E. Smith*
William E. Smith
United States District Judge
Date:  April 29, 2010